UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAE GORDON,

       Plaintiff,                              Hon. Janet T. Neff

v.                                                        Case No. 1:12 CV 295

KRISTA BENSON, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Haske and Hornkohl's Motion for Summary Judgment</u>. (Dkt. #68). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **denied**.

## BACKGROUND

Plaintiff Deontae Gordon is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility, though the events giving rise to this action occurred while he was incarcerated at the Oaks Correctional Facility (ECF). He sues the following employees of ECF: Resident Unit Officers (RUOs) (unknown) Benson and (unknown) Murtland; Assistant Resident Unit Supervisors (ARUSes) (unknown) McCarey and (unknown) Mitchell; Classification Director Amy Haske; Resident Unit Manager (RUM) (unknown) Thomas; Correctional Officer (unknown) Hornkohl; Librarian C. Little; and Grievance Coordinators Maryellen MacDonald and T. Bassett.

According to the complaint, on July 29, 2011, Plaintiff was assigned a work detail as a laundry worker in Unit 4, working from 12:00 p.m. to 6:00 p.m., Tuesday through Saturday. RUO Benson was the officer in charge of calling prisoners to work in Unit 4. After waiting for over a week to work his shift, Plaintiff asked Benson why she had not called him to work. She told him, "I don't allow Nation of Islam members to work in my unit anymore." (Compl. ¶ 21, docket #1.) Plaintiff filed a grievance regarding this incident. (*See* Ex. D, Grievance No. ECF-2011-08-2383-17D.)

On August 16, Benson reviewed Plaintiff's grievance with him. She asked Plaintiff how he would feel if she wrote a threatening behavior misconduct on him. Plaintiff asked her if he would be allowed to work, but she told him, "You can go back to your cell, you'll never work in this unit!" (Compl. ¶ 28.) Plaintiff filed a grievance about Benson's statements. (*See* Ex. F, Grievance No. ECF-2011-08-2423-17z.)

As Plaintiff waited to be called to work, inmate Whyte, a non-Muslim prisoner assigned to work a different shift as a hall porter, worked Plaintiff's assigned detail almost every day after Plaintiff received his assignment. On August 17, prison officials discovered a journal in Whyte's cell documenting an alleged intimate relationship between Benson and Whyte.

Plaintiff was not called to work until August 19, when Benson was not in the unit. When Plaintiff was called to work again on the evening of August 23, Benson called Plaintiff into the back laundry room. She asked Plaintiff to stop pursuing grievances against her because "she could not afford any more heat" due to an investigation into her relationship with Whyte. (Compl. ¶ 36.) She promised to start calling Plaintiff to work, and to fabricate payroll documents for all the days that he did not work, so long as he stopped filing grievances. Plaintiff was then called to work nine times between August

24 and September 6, 2011. Benson fabricated payroll documents to pay Plaintiff for every scheduled workday in August, including days that Plaintiff had not worked.

On September 7, Plaintiff filed another grievance against Benson, claiming that she fabricated payroll documents. (*See* Ex. G, Grievance No. ECF-2011-09-2066-02-C.) Thereafter, Benson did not call Plaintiff back to work until September 16. On September 21, ARUS McCarey asked Plaintiff to "sign off" on the September 7 grievance against Benson. (Compl. ¶ 42.) When Plaintiff refused, McCarey told Plaintiff that there would be "consequences" if he did not sign off. (*Id.*) Plaintiff filed a grievance about McCarey's threat. (Ex. H, Grievance No. ECF-2011-09-2826-17a.) Plaintiff interpreted McCarey's comment as an insinuation that "Plaintiff would be sent to the hole." (Compl. ¶ 42.)

Plaintiff worked again on September 22 and 23. On September 23, Defendants Benson and McCarey fabricated a negative work evaluation about Plaintiff, claiming, among other things, that Plaintiff did not report to work on time, did not follow safety rules, did not follow instructions, and did not cooperate with authority. (Compl. ¶ 44; Ex. I, Prisoner Program & Work Assignment Evaluation.)

Plaintiff worked again on September 29 when Benson was not in the unit. That evening, Classification Director Haske informed Plaintiff that he was "laid in" from his work detail in Unit 4 and would be reclassified. (Compl. ¶ 47.) Plaintiff has not worked in Unit 4 since that time.

On October 6, Plaintiff asked Haske why she had not assigned him to a new work detail. Haske told Plaintiff that he "needed to learn to keep his mouth shut and stop filing grievances." (Compl. ¶ 49.) Plaintiff filed a grievance about Haske's statements. (Ex. K, Grievance No. ECF-2011-10-30003-28c.) Grievance Coordinator MacDonald, a "close friend" of Haske, improperly rejected Plaintiff's grievance to deter Plaintiff from pursuing it. (Compl. ¶ 50.)

On October 10, while Plaintiff was in the law library, he requested permission to speak with Officer Hornkohl, who was in the hallway adjacent to the library. Hornkohl gave his permission, so Plaintiff stepped into the hallway. About a minute later, as Plaintiff was speaking with Hornkohl, Haske walked past them. Plaintiff turned toward Haske and asked if he could speak with her to resolve an issue before filing a grievance. Haske said "no!" and walked away. (Compl. ¶ 54.) Plaintiff finished his conversation with Hornkohl and went back into the law library. A few minutes later, Hornkohl called Plaintiff back into the hallway to speak with Haske. Haske asked for Plaintiff's identification and told Plaintiff that he would be receiving a misconduct notice. An hour later, Haske wrote a Class III misconduct report charging Plaintiff with being out of place. (Ex. M, 10/10/2011 Misconduct Report.) According to the report, Plaintiff had stepped into the hallway adjacent to the library without authorization on several prior occasions, for the purpose of speaking with Haske, and he did so again on October 10. (*Id.*) Hornkohl corroborated the report, stating that he did not authorize Plaintiff to be in the hallway or to speak with Haske. ARUS Mitchell reviewed the misconduct charge, spoke with Haske and Hornkohl, and found Plaintiff guilty of the misconduct without a hearing. As punishment, Plaintiff lost privileges for 7 days. Plaintiff filed a grievance against Haske, Hornkohl, and Mitchell regarding the misconduct charge and conviction. (*See* Ex. O, Grievance No. ECF-2011-10-3152-27a.) Plaintiff alleges that Grievance Coordinator Bassett improperly rejected the grievance to deter him from pursuing it.

On October 11, Haske, RUO Murtland, and RUM Thomas allegedly fabricated another negative work evaluation about Plaintiff. (*See* Ex. Q, 10/11/2011 Prisoner Program & Work Assignment Evaluation.) The evaluation report indicates that Plaintiff did not come to work on the correct days, did not follow all safety rules, did not cooperate with authority, did not perform tasks assigned to him, and

required constant supervision. In the comments section, the report states "Reclass[ify.] He is not progressing in his assignment." (*Id.*) Plaintiff filed a grievance about this report, claiming that it was fabricated because he had not worked since September 29 and there is no reason why Defendants would have waited until October 11 to report the violations mentioned. (*See* Ex. R, Grievance No. ECF-2011-10-3153-02b.) In response to the grievance, Plaintiff was told that the report would be corrected and a new one would be completed by Inspector Schiebner (who is not a Defendant in this action). The corrected report merely states that Plaintiff will be reclassified from his work assignment due to "not progressing on assignment." (*See* Ex. S, 10/21/2011 Prisoner Program & Work Assignment Evaluation.)

On November 3, 2011, Plaintiff received a Program Classification Report prepared by Defendant Haske which states: "No library work @ ECF due to 017 on 8/24/07 & 007 on 2/1/10." (Ex. T, 09/29/2011 Program Classification Report.) An "017" is a failure to disperse misconduct, and an "007" is a non-serious assault misconduct. (Compl. ¶ 75.) According to ECF Operating Procedures, there are four work assignments that a prisoner may not receive if there is a security concern. (*Id.* ¶ 76.) Work in the law library is not one of those assignments. Plaintiff contends that Haske singled out Plaintiff for disparate treatment because she assigned John Muriel, an inmate who has a history of staff assaults and weapons possession misconducts, to work in the library. Plaintiff filed a grievance regarding Haske's decision. (Ex. U, Grievance No. ECF-2011-3410-27b.) Defendant Bassett improperly rejected the grievance to deter Plaintiff from filing grievances.

On November 10, Plaintiff submitted a request to make copies of documents so that he could appeal the response to the grievance against Defendant Benson regarding the fabricated payroll statements. Librarian Little reviewed Plaintiff's documents and confiscated a document titled "July 4 Payroll for Unit 4 Porters: Entered by Defendant Benson," which she turned it over to Assistant Deputy

Warden (ADW) Sharp for inspection as possible contraband. (Compl. ¶ 83; Ex. V, Photocopy Disbursement Authorization; Ex. W, Contraband Removal Record.) Plaintiff filed a grievance regarding the confiscation, but he did not receive a response until December 22, when he discovered that MacDonald had improperly rejected it. Since November 10, 2011, Defendants MacDonald and Bassett have refused to acknowledge or process any of Plaintiff's other grievances. When Plaintiff saw Defendant MacDonald in December, he asked her to start processing his grievances, but she mocked him by making a sound like a crying baby.

On December 1, Plaintiff asked Defendant Little three times to make copies of legal documents in connection with the appeal of his criminal case to the United States Supreme Court. The first two times that Plaintiff asked Little, she ignored him. The third time, she stated: "Last time I made copies for you I had to confiscate them because the documents could have gotten Benson and Haske fired. I'm not making copies for you anymore." (Compl. ¶ 91.) Plaintiff then left the library and went to the control center to report the situation to the Inspector. At the control center, he spoke with two officers about Little's conduct. One of the officers issued Plaintiff an out-of-place misconduct. The other officer said that he would look into it. Later that evening, Plaintiff spoke with Deputy Warden Ball and ADW Sharp about Little's refusal to make copies, and they said that they would look into it.

The following day, Little requested a 30-day law library restriction for Plaintiff because Plaintiff had received an out-of-place misconduct during his law library callout. (Ex. X, 12/07/2011 Admin. Hr'g Report, docket #1-4, Page ID#109.) MDOC policy provides that prisoners who commit misconducts in the law library may be temporarily barred from accessing it. According to Little, Plaintiff left the law library without authorization, though Plaintiff asserts that he was not required to stay in the library for the duration of his callout. The hearing officer noted that Plaintiff went to the

control center without authorization during his library callout, but denied Little's request because the misconduct did not occur inside the library itself. (*Id.*) Plaintiff claims that Little "falsified" her report in retaliation for Plaintiff's past grievances and for speaking with her supervisors about her refusal to make copies.

On December 5, Plaintiff asked ARUS Mitchell to provide him with law books because Plaintiff had been taken off of library callout pending resolution of Little's request for a library restriction. Plaintiff explained to Mitchell that he needed copies for his criminal appeal. Mitchell told Plaintiff, "'F**k off Gordon, you don't have anything coming, don't cry now, play ball!'" (Compl. ¶ 102.) Later that day, during Mitchell's mail rounds, Plaintiff attempted to mail complaints to internal affairs and the warden and deputy wardens of ECF regarding MacDonald and Bassett's refusal to process his grievances. Mitchell looked at Plaintiff's documents and told him "that Plaintiff would never learn, and until Plaintiff learn[s] to stop being so rebellious he was going to 'Make it Hard' on Plaintiff." (Compl. ¶ 105.) That evening, Mitchell moved Plaintiff to a "restrictive transition unit designated for new ride-ins and inmates who[] [have] just been released from Segregation." (Compl. ¶ 106.) Inmates in the transition unit have more limited yard privileges and are not allowed to work outside the unit, so Plaintiff lost his job, the "highest paying job at the facility." (Compl. ¶ 107.) In addition, because he lost his job, Plaintiff "forfeited credits toward his custody reduction, which he was due to receive in January 2012." (*Id.* ¶ 108.)

On December 14, Officer Kartes gave Plaintiff a pass to go to the library. When Plaintiff arrived at the library, he told Little that he wanted to make legal copies. She responded, "'You don't have nothing coming.'" (Compl. ¶ 113.) As Plaintiff waited for Little to make the copies, an officer asked Plaintiff for his pass, which Plaintiff provided. A few minutes later, Defendant Hornkohl told

Plaintiff to leave the library, stating that Plaintiff did not have authorization to be there. Plaintiff tried to explain that he had a pass from Officer Kartes, but Hornkohl confiscated the pass, told Plaintiff that he would not be receiving copies, but he would receive an out-of-place misconduct ticket. Plaintiff never received a ticket. Plaintiff filed a grievance regarding this incident, but his grievance was not acknowledged or processed. He also reported the incident to internal affairs, the warden and deputy wardens of ECF, and the corrections ombudsman in Lansing, Michigan. That evening, Officers Montague and Pierson told Plaintiff that they would make sure that he received his copies.

The next day, December 15, Montague told Plaintiff that Little had been ordered to make Plaintiff's copies, and that she would call Plaintiff to the library to make them. On December 17, Plaintiff met with Little at the library. Little was "overly nice," asked Plaintiff to "let the past be the past," and told Plaintiff that she would give him extra law library time. (Compl. ¶ 124.)

Plaintiff asserts that Defendants violated his rights under the First and Fourteenth Amendments. As relief, he seeks a declaratory judgment, an injunction expunging fabricated documents from his records, as well as compensatory and punitive damages. (Compl., Page ID#39.) On June 28, 2012, the Honorable Janet T. Neff issued an Opinion and Order dismissing Plaintiff's claims against Defendants Bassett, MacDonald, Murtland, and Thomas. (Dkt. #7-8). The Court also dismissed Plaintiff's equal protection claims (save his claim against Defendant Benson), due process claims, access to the court claims, and conspiracy claims. The Court ordered that the remaining claims in Plaintiff's complaint be served on Defendants Benson, Haske, Hornkohl, McCarey, Mitchell, and Little. The Court subsequently reinstated Plaintiff's claim that Defendants Hornkohl and Haske engaged in a conspiracy to falsely charge Plaintiff with a misconduct violation. (Dkt. #21). Defendants Hornkohl and Haske now move for summary judgment.

# SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Conspiracy**

Plaintiff alleges that Defendants Haske and Hornkohl conspired to have him falsely convicted of a minor misconduct violation. Specifically, Plaintiff alleges that during an October 10, 2011 visit to the law library, he requested permission from Defendant Hornkohl to exit the library. Defendant Hornkohl granted the request and Plaintiff exited the library to speak with Hornkohl. Approximately one minute later, Defendant Haske walked past. Plaintiff asked Haske if he could speak with her, but Haske declined and continued walking. Plaintiff completed his conversation with Hornkohl and re-entered the library. Several minutes later, Plaintiff was summoned by Hornkohl who informed Plaintiff that he would be issued a minor misconduct charge for exiting the library without authorization (i.e., being out of place). Plaintiff alleges that Defendants conspired to falsely charge him with being out of place.

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). Defendants argue that they are entitled to summary judgment because "Plaintiff fails to establish that there was an agreement by the Defendants to commit an act depriving [Plaintiff] of a federal right." A review of the evidence presently before the Court, interpreted in a light most favorable to Plaintiff, leads to the conclusion that summary judgment on this claim is not appropriate.

In support of his motion for summary judgment, Defendant Hornkohl has submitted an affidavit in which he asserts the following. (Dkt. #69, Exhibit A). On October 10, 2011, Hornkohl observed Plaintiff exit the law library. Hornkohl did not authorize Plaintiff to exit the law library. Instead, Plaintiff observed Defendant Haske and exited the law library and requested to speak with her. Haske declined after which Hornkohl ordered Plaintiff to return to the law library which he did. Shortly thereafter, Haske asked Hornkohl if he had authorized Plaintiff to exit the law library. Hornkohl responded that he had not. Hornkohl further asserts that he and Haske did not conspire to retaliate against Plaintiff.

In support of her motion for summary judgment, Defendant Haske has also submitted an affidavit in which she asserts the following. (Dkt. #69, Exhibit B). On October 10, 2011, Haske was walking to the restroom when Plaintiff exited the law library and requested to speak with her. Haske refused Plaintiff's request and continued to the restroom. After exiting the restroom, Haske asked Hornkohl if Plaintiff had been given permission to exit the law library. Hornkohl informed Haske that Plaintiff had not been given permission to exit the law library at which point Haske determined to charge Plaintiff with being out of place. Haske further asserts that she and Hornkohl did not conspire to issue Plaintiff a false misconduct ticket.

In response, Plaintiff has submitted an affidavit executed by a fellow prisoner, Walter Lee Jones, who asserts the following. (Dkt. #70, Exhibit A). On October 10, 2011, Plaintiff was speaking with Jones in the law library. Plaintiff then asked Defendant Hornkohl for permission to exit the law library to speak with him. Hornkohl granted the request and Plaintiff exited the library and began speaking with Hornkohl. Approximately one minute later, Defendant Haske walked down the hallway. Plaintiff asked Haske if he could speak with her, but she declined. Plaintiff resumed speaking with

Hornkohl and subsequently re-entered the library. A short time later, Hornkohl summoned Plaintiff from the library.

Plaintiff has also submitted an affidavit in which he asserts the following. (Dkt. #70, Exhibit B). On October 10, 2011, Defendant Hornkohl granted Plaintiff permission to exit the law library to speak with him. While Plaintiff was speaking with Hornkohl, Defendant Haske walked past. Plaintiff asked Haske if he could speak with her, but Haske declined. Plaintiff was later summoned from the library and informed by Haske that she would be charging him with being out of place. This charge was supported by Defendant Hornkohl's false statement that Plaintiff had exited the library without authorization.

Defendants' motion fails because the evidence described above, viewed in a light most favorable to Plaintiff, is sufficient for a reasonable juror to find in Plaintiff's favor. Plaintiff and Walter Jones both assert that Hornkohl authorized Plaintiff to exit the library. This evidence, if believed, establishes that Hornkohl lied to Haske when asked if Plaintiff had permission to exit the library. That Hornkohl knowingly lied to Haske about this particular matter can be interpreted by a reasonable juror as circumstantial evidence that Hornkohl and Haske conspired to falsely charge Plaintiff with a misconduct violation.

Defendants counter that summary judgment is appropriate because Plaintiff "provides no eyewitness statements that they discussed retaliating against him or discussed falsifying the misconduct report." The Court disagrees as circumstantial evidence is sufficient to prevail on a conspiracy claim. *See, e.g., Childs v. United Community Bank*, 2009 WL 2244634 at *3 (E.D. Tenn., July 24, 2009) (recognizing that "civil conspiracies are rarely proven directly[, but] are more often established using circumstantial evidence and inferences drawn from the evidence"); *Spadafore v.*

*Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (recognizing that a civil conspiracy can be proven by circumstantial evidence). Defendants further assert that "Plaintiff's allegations are conclusory and without evidentiary support." This argument is rejected. Judge Neff has already determined that Plaintiff's allegations are sufficient to state a claim on which relief may be granted and, as discussed above, Plaintiff has presented evidence in support of his claim.

Defendants next argue that because Plaintiff was found guilty of the misconduct charge, such forecloses Plaintiff's conspiracy claim. Judge Neff, however, has already expressly rejected this argument. In an October 17, 2012, Opinion and Order, Judge Neff stated that "the misconduct conviction does not necessarily "checkmate" a conspiracy-to-retaliate claim against Haske and Hornkohl. . .because Plaintiff asserts that he did not have an opportunity to defend himself against the misconduct charge." (Dkt. #21 at 5 n.2). As Defendants have submitted no evidence demonstrating that Plaintiff was given an opportunity to defend against the misconduct charge, the undersigned discerns no reason to arrive at a different conclusion on this question. Finally, Defendants' claim of qualified immunity is rejected as a reasonable person would have known that conspiring to falsely charge an inmate with a misconduct violation is unlawful. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Behrens v. Pelletier*, 516 U.S. 299, 301 (1996); *Farhat*, 370 F.3d at 599. Accordingly, the undersigned recommends that Defendant Hornkohl and Haske's motion for summary judgment be denied as to Plaintiff's conspiracy claim.

**II.        Retaliation**

In her June 28, 2012 Opinion, Judge Neff observed that Plaintiff advanced several allegations of retaliation against Defendants Hornkohl and Haske. (Dkt. #7 at 16-17). Specifically,

Plaintiff alleged that Defendant Hornkohl undertook the following actions for unlawful retaliatory purposes: (1) confiscated Plaintiff's law library pass; (2) threatened to charge Plaintiff with a major misconduct violation; and (3) forced Plaintiff to exit the law library. Plaintiff alleged that Defendant Haske undertook the following actions for unlawful retaliatory purposes: (1) removed Plaintiff from his work detail; and (2) prepared a negative work evaluation concerning Plaintiff's work performance. With respect to Plaintiff's retaliation allegations against Defendants Hornkohl and Haske, Judge Neff concluded that such were sufficient to state a claim on which relief may be granted. (Dkt. #7 at 17).

Defendants Hornkohl and Haske request that the Court grant their motion for summary judgment "and dismiss this case with prejudice." Defendants have failed, however, to offer any evidence or argument addressing the aforementioned retaliation claims. The undersigned recommends, therefore, that to the extent that Defendants Hornkohl and Haske are seeking relief as to Plaintiff's retaliation claims that such be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants Haske and Hornkohl's Motion for Summary Judgment</u>, (Dkt. #68), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                      Respectfully submitted,

Date: November 15, 2013          /s/ Ellen S. Carmody
                       ELLEN S. CARMODY
                       United States Magistrate Judge