UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAE GORDON,

            Plaintiff,                                    Hon. Janet T. Neff

v.                                                              Case No. 1:12 CV 295

KRISTA BENSON, et al.,

            Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Summary Judgment. (Dkt. #94).
Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**.

## BACKGROUND

Plaintiff is a prisoner incarcerated with the Michigan Department of Corrections (MDOC)
at the Kinross Correctional Facility, though the events giving rise to this action occurred while he was
incarcerated at the Oaks Correctional Facility (ECF).  Plaintiff initiated this action against numerous
ECF employees:  Resident Unit Officers (RUOs) Benson and Murtland; Assistant Resident Unit
Supervisors (ARUS) McCarey and Mitchell; Classification Director Amy Haske; Resident Unit Manager
(RUM) Thomas; Correctional Officer Hornkohl; Librarian C. Little; and Grievance Coordinators
Maryellen MacDonald and T. Bassett.  The following allegations are contained in Plaintiff's complaint.

On July 29, 2011, Plaintiff was assigned a work detail as a laundry worker in Unit 4.
RUO Benson was responsible for calling prisoners to work in Unit 4.  After waiting more than one week

to begin work, Plaintiff asked Benson why she had not called him to work.  She told him, "I don't allow Nation of Islam members to work in my unit anymore."  In a subsequent conversation, Plaintiff asked Benson if he would be allowed to work, to which Benson responded, "[y]ou can go back to your cell, you'll never work in this unit!"  Instead, inmate Whyte, a non-Muslim prisoner worked Plaintiff's assigned detail.  Prison officials later discovered a journal in Whyte's cell documenting an alleged intimate relationship between Benson and Whyte.

Plaintiff was called to work on August 19, 2011, when Benson was not in the unit.  When Plaintiff was called to work again on the evening of August 23, 2011, Benson called Plaintiff into the back laundry room.  She asked Plaintiff to stop pursuing grievances against her because "she could not afford any more heat" due to an investigation into her relationship with Whyte.  She promised to start calling Plaintiff to work, and to fabricate payroll documents for all the days that he did not work, so long as he stopped filing grievances.  Plaintiff was called to work nine times between August 24, 2011, and September 6, 2011.  Benson later fabricated payroll documents to pay Plaintiff for every scheduled workday in August, including days that Plaintiff had not worked.

On September 7, 2011, Plaintiff filed another grievance against Benson, claiming that she fabricated payroll documents.  Thereafter, Benson did not call Plaintiff back to work until September 16, 2011.  On September 21, 2011, ARUS McCarey asked Plaintiff to "sign off" on his recent grievance against Benson.  When Plaintiff refused, McCarey told Plaintiff that there would be "consequences" if he failed to do so.  Plaintiff then filed a grievance regarding McCarey's threat.  On September 23, 2011, Defendants Benson and McCarey fabricated a negative work evaluation about Plaintiff, claiming, among other things, that Plaintiff did not report to work on time, did not follow safety rules, did not follow instructions, and did not cooperate with authority.  On September 29, 2011, Classification Director

Haske informed Plaintiff that he was "laid in" from his work detail in Unit 4 and would be reclassified.

On October 6, 2011, Plaintiff asked Haske why she had not assigned him to a new work detail.  Haske told Plaintiff that he "needed to learn to keep his mouth shut and stop filing grievances." Plaintiff filed a grievance regarding Haske's statements.  Grievance Coordinator MacDonald rejected Plaintiff's grievance so as to deter Plaintiff from pursuing it.

On October 10, 2011, while Plaintiff was in the law library, he requested permission to speak with Officer Hornkohl, who was in the hallway adjacent to the library.  Hornkohl agreed and Plaintiff stepped into the hallway.  As Plaintiff was speaking with Hornkohl, Haske walked past. Plaintiff asked Haske if he could speak with her for a moment.  Haske declined and walked away. Plaintiff finished his conversation with Hornkohl and returned to the law library.  A few minutes later, Plaintiff was summoned into the hallway to speak with Haske who told Plaintiff that he would be receiving a misconduct notice.  Later that day, Haske charged Plaintiff with being out of place.  Haske alleged that Plaintiff stepped into the hallway adjacent to the library without authorization on several prior occasions and did so again on the date in question.  Hornkohl corroborated Haske's allegations. ARUS Mitchell reviewed the misconduct charge, spoke with Haske and Hornkohl, and found Plaintiff guilty of the misconduct.  As punishment, Plaintiff lost privileges for seven days.

On October 11, 2011, Haske, RUO Murtland, and RUM Thomas fabricated another negative work evaluation concerning Plaintiff.  This particular evaluation indicated that Plaintiff did not attend work as scheduled, did not follow safety rules, did not cooperate with authority, did not perform tasks assigned to him, and required constant supervision.  On November 3, 2011, Plaintiff received a Program Classification Report prepared by Defendant Haske indicating that he would not be permitted to work in the law library due to previous misconducts, including an assault misconduct.  Plaintiff

contends that Haske singled him out for disparate treatment because she previously assigned another inmate with a history of staff assault and weapons possession misconducts to work in the library. Plaintiff filed a grievance regarding Haske's decision. Defendant Bassett rejected the grievance so as to deter Plaintiff from filing grievances.

On November 10, 2011, Plaintiff submitted a request to make copies of documents so that he could appeal the response to the grievance against Defendant Benson regarding the allegedly fabricated payroll statements. After reviewing Plaintiff's documents, Librarian Little confiscated a document titled "July 4 Payroll for Unit 4 Porters: Entered by Defendant Benson," which she turned over to Assistant Deputy Warden (ADW) Sharp for inspection as possible contraband.

On December 1, 2011, Plaintiff asked Defendant Little to make copies of legal documents in connection with the appeal of his criminal conviction. Defendant Little responded to Plaintiff's request by stating, "Last time I made copies for you I had to confiscate them because the documents could have gotten Benson and Haske fired. I'm not making copies for you anymore." Plaintiff exited the library and went to the control center to report the situation. Later that evening, Plaintiff spoke with Deputy Warden Ball and ADW Sharp who indicated they would look into the matter.

The following day, Little requested a 30-day law library restriction for Plaintiff because he had received an out-of-place misconduct during a recent law library callout. MDOC policy provides that prisoners who commit misconducts in the law library may be temporarily barred from accessing it. According to Little, Plaintiff exited the law library without authorization, though Plaintiff asserts that he was not required to stay in the library for the duration of his callout. The hearing officer noted that Plaintiff went to the control center without authorization during his library callout, but nevertheless denied Little's request because the misconduct did not occur inside the library itself. Plaintiff claims

that Little "falsified" her report in retaliation for Plaintiff's past grievances and for speaking with her supervisors about her refusal to make copies.

On December 5, 2011, Plaintiff asked ARUS Mitchell to provide him with certain law books.  Plaintiff also explained to Mitchell that he needed copies for his criminal appeal.  Mitchell told Plaintiff, "'F**k off Gordon, you don't have anything coming, don't cry now, play ball!'"  Later that day, Plaintiff attempted to mail complaints to internal affairs as well as the warden and deputy warden regarding MacDonald and Bassett's refusal to process his grievances.  Mitchell looked at Plaintiff's documents and told Plaintiff that he "would never learn" and until Plaintiff "stop[ped] being so rebellious he was going to 'Make it Hard' on [him]."  That evening, Mitchell moved Plaintiff to a "restrictive transition unit designated for new ride-ins and inmates who[] [have] just been released from Segregation."  Inmates in the transition unit have more limited yard privileges and are not allowed to work outside the unit, so Plaintiff lost his job, the "highest paying job at the facility."  In addition, because he lost his job, Plaintiff "forfeited credits toward his custody reduction, which he was due to receive in January 2012."

On December 14, 2011, Officer Kartes issued Plaintiff a library pass.  When Plaintiff arrived at the library, he told Little that he wanted to make legal copies.  Little refused Plaintiff's request. While attempting to resolve the matter with Little, an officer asked Plaintiff for his pass, which Plaintiff provided.  A few minutes later, Defendant Hornkohl told Plaintiff to leave the library, stating that Plaintiff did not have authorization to be there.  Plaintiff tried to explain that he had a pass from Officer Kartes, but Hornkohl told Plaintiff that he would receive an out-of-place misconduct ticket.  Plaintiff never received a ticket.  Plaintiff filed a grievance regarding this incident, but his grievance was not acknowledged or processed.  He also reported the incident to internal affairs, the warden and deputy

wardens of ECF, and the corrections ombudsman.  That evening, Officers Montague and Pierson told Plaintiff that they would make sure that he received his copies.

The next day, Montague told Plaintiff that Little had been ordered to make Plaintiff's copies, and that she would call Plaintiff to the library to make them.  On December 17, 2011, Plaintiff met with Little at the library.  Little was "overly nice," asked Plaintiff to "let the past be the past," and told Plaintiff that she would give him extra law library time.

Plaintiff asserts that Defendants violated his rights under the First and Fourteenth Amendments.  Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.  Plaintiff's claims have all been dismissed except for his retaliation claims asserted against Defendant Little.  Plaintiff now moves for summary judgment as to his remaining claims.  Defendant Little has failed to respond to Plaintiff's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398

F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the

nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view

the evidence in the light most favorable to the non-moving party, the party opposing the summary

judgment motion "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a

genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary

judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty

v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Plaintiff asserts that he is entitled to summary judgment on his remaining retaliation claims. While Defendant Little has failed to respond to Plaintiff's motion, such is not a sufficient basis for granting Plaintiff's motion. *See Delphi Automotive Systems, LLC v. United Plastics, Inc.*, 418 Fed. Appx. 374, 380-81 (Mar. 30, 2011) ("a district court cannot grant summary judgment in favor of a

movant simply because the adverse party has not responded," rather "[t]he court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has [met his] burden").  A review of the evidence submitted by Plaintiff, however, reveals that he has failed to carry his burden.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in the protected conduct in question, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct.  *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). While Plaintiff has demonstrated that he was engaged in protected conduct, he cannot carry his burden with respect to the other two elements.

A.     Adverse Action

As described above, Plaintiff alleges that Defendant Little confiscated certain of his documents, refused his requests for copies, refused him access to the law library, and attempted to have him banned from the law library for a 30-day period.  Plaintiff alleges that Defendant's conduct is capable of deterring a person of ordinary firmness from engaging in the constitutionally protected conduct in question, namely pursuing his criminal appeal and filing prison grievances.  While it may not be unreasonable to conclude such, such does not necessarily lead to the conclusion that Plaintiff is entitled to judgment as a matter of law.

As the Sixth Circuit has indicated, "[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). The *Bell* court did, however, recognize an exception for circumstances in which a plaintiff alleges retaliatory actions that are "so de minimis that they do not rise to the level of being constitutional violations." *Id.* This exception is "intended to weed out only inconsequential actions," but where applicable may support entry of summary judgment in favor of defendants. Plaintiff's allegations are not inconsequential, therefore, whether Defendants' alleged conduct is sufficiently egregious to deter a person of ordinary firmness from engaging in the conduct in question is a question for a jury to resolve. *Id.* ("unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury").

B.      Causation

The other shortcoming with Plaintiff's motion is that the evidence thus far submitted is insufficient to merit finding for Plaintiff as to the causation element. With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Moreover, the mere existence of temporal proximity is insufficient by itself to establish the

requisite causal connection. *See Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 504 (6th Cir., Apr. 13, 2011).

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Accordingly, even if Plaintiff demonstrates that his protected conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if she demonstrates that she "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42. As noted above, because Plaintiff bears the burden of proof at trial he bears a "substantially higher hurdle" to obtain summary judgment. Specifically, Plaintiff must present evidence so persuasive that no reasonable trier of fact could find for Defendant. On the other hand, if the evidence is susceptible of different interpretations or inferences by the trier of fact, summary judgment in favor of Plaintiff is not warranted.

With respect to the causation element, Plaintiff, in support of his motion for summary judgment, relies on Defendant Little's responses to discovery requests as well as certain email communications by Defendant. A review of this material, however, indicates that Plaintiff cannot carry his burden. Defendant's discovery responses and email communications indicate that she undertook the allegedly retaliatory action for purposes unrelated to Plaintiff's protected conduct. (Dkt. #94). While Plaintiff has advanced arguments as to why this evidence should not be believed or should be interpreted in a manner favorable to him, such arguments do not constitute evidence on which summary judgment may be granted. Simply stated, this evidence is not so persuasive as to permit a finding only for Plaintiff, rather such is susceptible of different interpretations or inferences. Accordingly, summary judgment in Plaintiff's favor is not warranted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, (Dkt. #94), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  April 15, 2014                      /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge